UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| **HYUNDAI GLOVIS CO., LTD.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 24-1724 |
| ) | |
| **VANE LINE BUNKERING, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, Vane Line Bunkering, LLC ("Vane"), by and through its attorneys, Imran O. Shaukat, H. Allen Black, III, and Mills Black LLP, hereby files its Reply to Plaintiff Hyundai Glovis Co. Ltd.'s ("Hyundai Glovis") Opposition to Defendant's Motion to Dismiss (the "Opposition") as follows:

**A.      Legal Standard for Motion to Dismiss**

With regard to the standard applicable to a Motion to Dismiss, Plaintiff appears to have misread both the inapplicable cases from the Commonwealth of Massachusetts upon which Plaintiff appears to rely, and the Supreme Court precedents cited by those cases. Simply put, the well-known standard to survive a Motion to Dismiss is that:

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Blue Ridge Risk Partners, LLC v. Willem*, 724 F. Supp. 3d 398, 403 (D. Md. 2024).

To survive dismissal, a complaint must do more than merely "suggest" an entitlement to relief – it must set out factual allegations that, if true, would establish a right to relief. *Twombly, supra*. As discussed more fully in the Defendant's Motion to Dismiss (the "Motion"), the Complaint here fails to do so. Because the Opposition fails to address the fatal shortcomings of Plaintiff's case, and therefore the Complaint, the Motion should be granted.

**B.     Vane owes no tort duty to Hyundai Glovis.**

    *1.     The Case of Maersk Line Ltd is on point – Plaintiff's claims are barred.*

The Motion had referred to the case of *Maersk Line Ltd. v. Care*, 271 F.Supp.2d 818 (E.D. Va. 2003) as an analogous factual situation in which the court had rejected a vessel owner's effort to construct a negligence claim out of the alleged breach of the defendant's duties to another party, just as Plaintiff is attempting here. Plaintiff's effort to distinguish the case, and sidestep its meaning, relies upon an overly narrow reading of the case.

As set out more fully in the Motion with regard to the *Maersk* case, CARE, the voyage charterer in that case, had obtained grain from ADM to be carried in Maersk's vessel's holds. That grain was contaminated and caused an infestation of the holds, requiring fumigation and causing delay. *Id.* at 820. Maersk sued ADM under both tort and contract. *Id.* at 823.

Hyundai Glovis concedes that *Maersk* holds that no claim lies in tort for purely economic losses. Seeking to distinguish this case from *Maersk*, Hyundai Glovis argues that this case presents direct damage, rather than purely economic loss. (Opp. at p. 6.) However, Hyundai Glovis overlooks that it was the time charterer of the vessel, not the owner. (Complaint at ¶ 7).

Accordingly, any alleged damage to the vessel was not to any proprietary interest of Hyundai Glovis. Rather, Hyundai Glovis' claim for damages is based on expenses it alleges were incurred under its time charter with the vessel owner – in other words, purely economic

2

damages.  (Complaint at ¶¶ 34, 35.)  *See Federal Commerce & Nav. Co., Ltd. v. M/V Marathonian*, 528 F. 2d 907 (2d Cir. 1975) (holding that time charterer was without property right in vessel and therefore could not recover pecuniary loss sustained as result of a third party's alleged negligence).  *See also Gas Natural SDG S.A. v. U.S.*, 2007 A.M.C. 1058, 2007 WL 959259, at *3, (S.D.N.Y. March 22, 2007) ("In cases of unintentional maritime tort, a party cannot recover for pecuniary damages flowing from damage to a vessel unless that party has a proprietary interest in the vessel … A typical time-charterer does not have a proprietary interest in a vessel.")

As noted in *Maersk*, "claims for economic loss unaccompanied by physical damage to a proprietary interest are not recoverable in admiralty."  *Maersk*, 271 F.Supp.2d at 824.  Because Hyundai Glovis had no proprietary interest in the vessel it alleges was damaged, its reference to *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997) and *Princess Cruises, Inc. v. General Elec. Co.*, 950 F. Supp. 151, 155 (E.D. Va. 1996) are also inapt.

> 2. ***The duty to deliver the fuel oil arose under Global's contract, not under a tort duty of Vane.***

Hyundai Glovis alleges that the fuel oil it purchased from Global Montello Group Corp. ("Global") had become contaminated due to Vane "negligently failing to maintain [the barge] in a condition fit to deliver fuel oil." (Complaint at ¶ 41.)  However, that allegation fails to set forth a general tort duty on the part of Vane independent of Vane's contractual obligation to Global.  To the extent that Vane may have had a duty to maintain the barge in a condition fit to deliver fuel oil, such a duty arose under Vane's contract with Global pursuant to Vane's Standard Terms and Conditions for Marine Transportation Services (the "Vane Terms").  Vane owes no duty to the world at large to maintain its barge in a condition fit to deliver fuel oil.  Moreover, under the

Vane Terms, Vane's duty was to "exercise due diligence" to maintain its barge, and not a strict liability undertaking as postulated by Hyundai Glovis.

Accordingly, Vane's duty is not a tort duty, but one of contract – to Global. As discussed above, the contract for the purchase and delivery of the fuel oil was one between sophisticated commercial entities – Global on the one hand, and Hyundai Glovis on the other, both well familiar with the sale and purchase of marine fuels. The contract between Hyundai Glovis and Global specifically addressed the contingency of off-specification fuel oil and provided a remedy to purchaser Hyundai Glovis. (Global General Terms and Conditions – Bunker Fuels (the "Global Terms"), Exh. A to the Motion at § 9.b.) Likewise, the contract between Global and Vane specifically addressed the contingency of some breach of a duty of care with regard to the fitness of Vane's vessel to deliver fuel oil on behalf of Global. (the Vane Terms, Exh. B. to the Motion at § 2.)

In *Maersk*, as here, the plaintiff had also sought to argue that ADM's negligence had damaged the grain itself, in which Maersk claimed a proprietary interest. *Maersk*, 271 F.Supp.2d at 824. As noted in the Motion, the court dispensed with that argument, holding that:

> The laws of contract and insurance offer ample opportunity for sophisticated commercial parties to cover contingencies that might occur. In the case before the court, for example, Maersk has a contract with CARE for shipment of the grain in question. CARE, in turn, contracted with ADM to provide the grain. Maersk has a potential avenue of recovery through its contract. CARE, in turn, is free to pursue an action for breach against ADM, if it so desires.

*Id.* at 824–25.

Here, just as in the *Maersk* case, any responsibility of Defendant to Plaintiff was based on a set of contractual arrangements; in this case, the contractual arrangement between Hyundai Glovis and Global for the purchase of fuel oil, and the contractual arrangement between Global and Vane for the transportation of the fuel oil. The transportation of the fuel oil was provided by

4

Global pursuant to Section 3 of the Global Terms ("Seller … undertakes to provide this service [delivery by barge]"), and Vane acted as a subcontractor to Global pursuant to the Vane Terms. Vane's performance was owed to Global, not to Hyundai Glovis.

Hyundai Glovis's reference to *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) to argue otherwise fails both factually and legally. In *Torco*, plaintiff's barge was damaged when the cargo supplier negligently pumped shore tank bottoms (non-viscous residue material) into a barge intended to transport the cargo. *Id.* at 374-75. Analogizing the case to one where a shipper fails to notify the vessel owner of a foreseeable hazard in cargo, the court held that Torco could have anticipated that its pumping of tank bottoms would cause harm to the barge. *Id.* at 376-77.

In this case, though, the Complaint makes no allegation that Vane knew of any alleged contamination, or could have anticipated any harm to the vessel or Plaintiff. The Complaint of Hyundai Glovis instead lays out an allegation of what is essentially strict liability based purely on speculation (Complaint at ¶ 40.)

More on point than *Torco* is *Serifos Mar. Corp. v. Glencore Singapore Pte Ltd.*, No. 22 CIV. 8012 (LGS), 2023 WL 6317996, at *5 (S.D.N.Y. Sept. 28, 2023). In *Serifos*, the court considered a case in which a vessel ordered fuel from a supplier, but the fuel was allegedly delivered in a contaminated condition. The court dismissed plaintiff's tort claims, noting that "The Complaint offers no basis to infer an independent duty owed to Plaintiffs by Defendant beyond that which arose from the [general terms and conditions]. The Complaint's negligence and strict liability claims are dismissed." *Id.* at *5.

Vane's duty to exercise due diligence to provide a vessel with tanks, lines, valves, and pumps in good working order and capable of caring for the cargo was expressly based on its

5

contract with Global under the Vane Terms. (Vane Terms at § 2.) Hyundai Glovis nevertheless maintains that Vane allegedly owed a duty to Hyundai Glovis to provide a barge with properly maintained and cleaned tanks, lines and manifolds. (Complaint at ¶ 37.)

While there are some instances in which a duty exists as a matter of law due to a special relationship between the parties, no special relationship here exists between Vane and Hyundai Glovis. The only potential basis for Hyundai Glovis to claim that it is owed a duty by Vane would be under a contractual theory. However, Hyundai Glovis is not a party to the Global/Vane contract.

**C.    Hyundai Glovis' breach of implied contract must be dismissed because the Complaint fails to allege either an implied contract in fact or implied contract in law.**

The Complaint claims the creation of an implied contract based on the allegation that Hyundai Glovis paid (Global) for the fuel oil to be transported to the vessel. (Complaint at ¶ 45.) The Opposition admits that Hyundai Glovis paid pursuant to a contract with Global (Opp. at p 9), but still contends that Hyundai Glovis also had an implied contract with Vane that was, according to Hyundai Glovis, either an implied in fact contract, an implied in law contract, or both. (Opp. at pp 9-13.) However, the Complaint fails to sufficiently allege either.

*1.    Hyundai Glovis fails to allege any "meeting of the minds" between Hyundai Glovis and Vane as needed to establish the existence of an implied-in-fact contract.*

Plaintiff's opposition makes abundantly clear that prolixity does not equal legal sufficiency. Simply put, the Complaint fails to plead facts to establish the elements of an implied-in-fact contract.

To plead an implied-in-fact contract, a plaintiff must plead facts showing that the defendant intended to enter into a contractual relationship with the plaintiff. *See Hercules Inc. v.*

6

*United States*, 515 U.S. 417, 424 (1996) (stating that a contract implied in fact is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."); *see also Pasadena Boat Works, LLC v. Carolina Skiff, LLC*, 694 F. Supp. 3d 599, 607 (D. Md. 2023) (a plaintiff must plead that the defendant, through its conduct, intended to enter into a contractual relationship with the plaintiff).

Hyundai Glovis has failed to plead such facts in its Complaint. Rather, Hyundai Glovis has pled a contract between itself and Global and a contract between Global and Vane. (Complaint, ¶¶ 13, 14.) The Complaint alleges nothing resembling mutual assent between Hyundai Glovis and Vane to an implied-in-fact contract, and nothing to show that Vane had intended to enter into a contractual relationship with Hyundai Glovis. Vane had no interactions or discussions with Hyundai Glovis at any stage regarding the delivery of bunker fuel to the Vessel, and the Complaint does not allege any. Without such factual allegations establishing that element, Hyundai Glovis cannot establish an implied-in-fact contract as a matter of law.

Instead, Hyundai Glovis in its Opposition claims that it tendered payment for the transportation of the fuel oil (albeit to Global), and that Vane delivered the fuel oil (albeit pursuant to its contract with Global). It carries on to state Hyundai Glovis' expectation that it would have received uncontaminated fuel. However, none of that addresses the flaws in the Complaint. Regardless of Hyundai Glovis' post-facto statement of its expectations, nothing shows any intention on the part of Vane to enter into a contract with Hyundai Glovis. Indeed, the Complaint shows the opposite – that Vane was engaged by Global. (Complaint at 14.)

### 2.  *As an ancillary matter Hyundai Glovis fails to correct its ambiguity about who it paid for the transportation of the fuel oil.*

Hyundai Glovis had the opportunity in its Opposition to clean up a misleading ambiguity in its Complaint.  The Complaint at ¶ 37 stated: "As the party Hyundai Glovis paid for the delivery of marine fuel it purchased from Global, [Vane] owed a duty to Hyundai Glovis to deliver the fuel to Triton Ace …"  The assertion that Hyundai Glovis paid Vane is not true, as indicated by earlier pleadings in the Complaint itself.  The Complaint at ¶ 14 states that "Global engaged [Vane] to deliver the bunker fuel it sold to Hyundai Glovis," and at ¶19 states "Hyundai Glovis also paid $7,618,75 for barging costs by [Vane] …" (emphasis added).

Exhibit C to the Motion to Dismiss made clear that "Vane invoiced and received payment from Global for the transportation of the [fuel oil]."  (Declaration of Brendan MacGillivary, Exh. C to the Motion at ¶ 5.)  Yet Hyundai Glovis was again misleading in its Opposition, contending that it formed a contract with Vane by tendering payment, which it identified as an "offer" to Vane, and that Vane "took the payment," which Hyundai Glovis identified as "acceptance."  (Opp. at 10.)  But then Hyundai Glovis apparently seeks to minimize its ambiguity about the facts of the payment on page 11 of the Opposition, stating "Whether this [payment] was paid to Vane Line directly or indirectly (through Global) is immaterial."  (Opp. at 11.)

The fact that Hyundai Glovis paid Global, not Vane, is not immaterial.  Indeed, if Hyundai Glovis *had* paid Vane directly, then it would not need to try to create the fiction of an implied contract – it would have had an actual contract with Vane as Hyundai Glovis seems to argue in its Opposition at p. 10.  However, in such a case, the contract would be under the Vane Terms, which, among other things, includes a binding arbitration clause and a one-year limitation period for claims.  (Vane Terms, Exh. B. to the Motion to Dismiss, at § 33.)

To avoid that consequence, Hyundai Glovis argues that an implied contract would not be subject to the Vane Terms "as a matter of law" although it does not cite to any actual law to support that claim. Rather, Hyundai Glovis asserts that it did not allege that it was even aware of the Vane Terms. (Opp. at p. 15.) If it was not aware of the Vane Terms, that could only be because it did not pay Vane, it paid Global, pursuant to its contract with Global. (Complaint at ¶¶ 13, 14, 18, 19.)

### 3. *Hyundai Glovis' fails to allege an implied-in-law contract.*

Hyundai Glovis' argument for an implied-in-law contract fares no better. Implied-in-law contracts were "invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *See Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*, 249 Md. App. 307, 314 (2021). An implied-in-law contract cannot exist when an express contract, such as the agreement between Hyundai Glovis and Global, covers the same subject matter as the contract that a Plaintiff seeks to imply with a third party. *See id.* at 329 ("when the plaintiff has a viable breach of contract remedy against the contracting party for the same recovery it seeks in restitution, based on unjust enrichment, against a third party, retention of the benefit by the third party will not be unjust.")

Other than restating the applicable law, Hyundai Glovis' sole argument for the existence of an implied-in-law contract is that it paid Global for the fuel to be delivered, Global paid Vane to deliver it, Vane did so, but Hyundai Glovis allegedly incurred damages as a result of allegedly off-specification fuel oil, so "in equity and good conscience Vane Line ought not to retain [that consideration] it [received from Global]." (Opp. at 12.) What is missing from that argument is the acknowledged fact that Vane made the delivery under contract to Global, for which both parties received the benefit of their contract. Hyundai Glovis has identified no authority for

9

implying in law a contract with a third party as a way of seeking an alternate remedy against its supplier's subcontractor after failing to exercise its contractual remedy against its supplier.

**D.      Hyundai Glovis' claim for breach of implied warranty of workmanlike performance fails because there was no contract between it and Vane.**

Because Hyundai Glovis does not have an underlying contract with Vane, the implied warranty claim fails as a matter of law.  *See Nathaniel Shipping, Inc. v. General Elec. Co.,* 920 F.2d 1256, 1263-64 (5th Cir.), opinion on petition for rehearing, 932 F.2d 366 (5th Cir. 1991) (ship owner cannot sue a subcontractor with whom it is not in contractual privity for breach of a warranty of workmanlike performance of repairs); *Maersk Line Ltd. v. Care*, 271 F. Supp. 2d 818, 826-27 (E.D. Va. 2003) (ship owner did not have claim for breach of implied warranty of workmanlike performance against supplier of grain because the warranty is only binding as to parties in privity of contract and third-party beneficiaries).

**E.      Hyundai Glovis' request for leave to file an Amended Complaint to assert status as a third-party beneficiary under the Global/Vane contract must be denied as futile.**

   *1.      Hyundai Glovis was not a third-party beneficiary of the Global-Vane contract.*

To determine whether Hyundai Glovis was an intended third-party beneficiary of the contract between Global and Vane, one would first need to assess that contract in context. Hyundai Glovis and Global addressed the transportation of fuel oil in the Global Terms as follows:

> 3. BARGING: In the event of a vessel requiring delivery by barge, Buyer shall notify Seller of such requirement when making the inquiry on which Seller's quotation is to be based.  If Buyer so notifies Seller after Seller's quotation, Seller's performance shall be subject to the availability of the necessary facilities. Seller only undertakes to provide this service within normal harbor limits. Buyer's vessel shall provide a free side and steam if required for delivery.  Buyer shall pay Seller the current posted barging rates at the port concerned, and any other charges incurred in connection with such barging, including but not limited to, mooring and unmooring costs, port duties, wharfage and demurrage.

10

That section makes clear that, as far as Hyundai Glovis was concerned, Global was responsible for the delivery of the fuel oil sold by Global.  Among other things, the foregoing provision states "<u>Seller</u> … undertakes to provide this service [i.e. delivery by barge]."  (Global Terms at § 3, emphasis added.)

To meet that obligation, Global engaged Vane.  Accordingly, Vane's contract with Global was for the benefit of Global, not other parties, and in carrying out its obligations under its contract, it was acting on behalf of Global.

The Vane Terms further evidence that Vane and Global did not intend to extend their contract to any third party beneficiaries.  In addition to including an express arbitration clause (at § 33) and confidentiality provisions (at § 34), the Vane terms include an express restriction that "Neither party hereto may assign any of its rights or obligations hereunder except with the express written consent of the other party hereto," (at § 38).  The foregoing all evidence the intent that only the parties to the contract, i.e. Vane and Global, would have any right to enforce the contract.

> 2. **If Hyundai Glovis were a third-party beneficiary of the Global/Vane contract, it would be bound by the contract terms, including the arbitration and limitation terms.**

Even assuming, *arguendo*, that Hyundai Glovis could establish that it was an intended third-party beneficiary under the contract between Global and Vane, Hyundai Glovis could not selectively enforce the rights of that contract without abiding by its limitations.  *See, e.g., Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 32 (2004) (holding that third-party beneficiaries are bound by the liability limitations in the original contract*); Hercules, Inc. v. Stevens Shipping Co.*, 629 F.2d 418, 422 (5th Cir. 1980), *on reh'g,* 698 F.2d 726 (5th Cir. 1983) ("Thus Escambia, as a third-party beneficiary of the Hercules-Detco towage contract, is bound by the one-year limitations provision in that contract.").

11

As Vane set forth in its Motion, Marine transportation services performed by Vane are subject to the Vane Terms. (Vane Terms at p. 1.) Under the Vane Terms, any claim against Vane in connection with marine transportation services is waived unless arbitration is commenced by service of a demand for arbitration within one year of the occurrence of the event giving rise to the dispute. (Vane Terms at Sec. 33.)

Hyundai Glovis has not served a demand for arbitration against Vane as required by the Vane Terms, and the one-year period had expired on June 22, 2022, long before Hyundai Glovis initiated this case in June 2024. Accordingly, Plaintiff's request for leave to file an Amended Complaint to claim third-party beneficiary status under the Global/Vane contract should be denied as futile, because any such claim against Vane is untimely by the terms of the contract that Hyundai Glovis would seek to enforce. *See Cuffee v. Verizon Communications, Inc.*, 755 F. Supp. 2d 672, 677 (D. Md. 2010) (stating that amendments to a complaint are futile so as to warrant the denial of a motion for leave to amend when the proposed amendment could not withstand a motion to dismiss).

## CONCLUSION

For the reasons set forth above and in its Memorandum of Law in Support of its Motion to Dismiss, Vane respectfully requests this Court to dismiss the claims of Hyundai Glovis, with prejudice, and to grant such other relief as it deems appropriate in the interests of justice.

**Dated: March 18, 2025**

                                                                          */s/ Imran O. Shaukat*
                                                                          H. Allen Black, III (24542)
                                                                          Imran O. Shaukat (30134)
                                                                          **MILLS BLACK LLP**

1215 19th Street NW<br>
Washington, DC 20036<br>
Tel.: (202) 967-4100<br>
hablack@millsblack.com<br>
ishaukat@millsblack.com<br>
*Attorneys for Defendant*<br>
*Vane Line Bunkering, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 18th day of March, 2025, that Vane Line Bunkering, LLC's Reply in Support of Motion to Dismiss was served on all counsel of record via this Court's ECF/CM system.

*/s/ Imran O. Shaukat*
Imran O. Shaukat (30134)